UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X
                                        :

ARNAUD BELLEVUE,                :
                                          :
                      Plaintiff,      :
                                          :
                      v.             :       17 Civ. 7430 (KPF)
                                          :

1199SEIU HEALTH CARE EMPLOYEES  :     **OPINION AND ORDER**
PENSION FUND, LONG ISLAND JEWISH  :
MEDICAL CENTER, FRANKLIN HOSPITAL,  :
MICHAEL KAISER, and JOHN and JANE  :
DOES,                                  :
                                          :
                    Defendants.  :
                                          :
------------------------------------------------------ X

KATHERINE POLK FAILLA, District Judge:

       Plaintiff Arnaud Bellevue, proceeding *pro se*, filed suit against his former

employers, the Long Island Jewish Medical Center ("LIJ") and Franklin Hospital

("Franklin," and together with LIJ, the "Hospitals" or the "Hospital

Defendants"), as well as the 1199SEIU Health Care Employees Pension Fund

(the "Fund"), and the Fund's Chief Pension Officer, Michael Kaiser (together

with the Fund, the "Fund Defendants," and together with the Hospitals and the

Fund, "Defendants").  Plaintiff alleges violations of Sections 502(a)(1)(B),

503(a)(2), and 502(a)(3) of the Employee Retirement Income Security Act of

1974 ("ERISA"), *see* 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3)(B).  In

broad summary, Plaintiff, who retired after working for 36 years at the

Hospitals, argues that certain overtime compensation he received between

2004 and 2013 should have been included in his pension benefit calculations.

Defendants move for summary judgment on various grounds. Although the Court is sympathetic to certain of Plaintiff's arguments, it remains the case that there are no genuine disputes of material fact, and Defendants' motions are therefore granted.[1]

---

[1]      This Opinion draws its facts from the Complaint (Dkt. #1 ("Compl.")), the Hospital Defendants' Statement Pursuant to Local Rule 56.1 (Dkt. #31 ("Hosp. Def. 56.1")), the Fund Defendants' Statement Pursuant to Local Rule 56.1 (Dkt. #34 ("Fund Def. 56.1")), Plaintiff's Reply Statement Pursuant to Local Rule 56.1 (Dkt. #45 ("Pl. 56.1 Reply")), and certain exhibits submitted by the parties in conjunction with the instant motions. The Fund Defendants have submitted exhibits as attachments to the Declaration of Rhonda Hing, including the Retirement Committee's June 1, 2017 denial of Plaintiff's appeal (Hing Decl., Ex. A (Dkt. #25-1 ("Comm. Ltr."))); and the breakdown of Plaintiff's straight-time and overtime wages at Franklin (Hing Decl., Ex. A-G (Dkt. #25-1 ("Wage Records"))). The Hospital Defendants have submitted declarations with exhibits, several of which are discussed in this Opinion: Attached to the Declaration of Philip F. Repash is a redacted copy of Plaintiff's IRS W2 Form (Repash Decl., Ex. H (Dkt. #33-8 ("Pl. W2"))). Attached to the Declaration of Michael Kaiser is a copy of the Summary Plan Description (Kaiser Decl., Ex. A (Dkt. #24-1 ("SPD"))). Finally, attached to the Declaration of Nicholas Bauer are a March 12, 2018 letter from the Hospital Defendants' counsel to Plaintiff (Bauer Decl., Ex. F (Dkt. #50-1 ("Mar. 12 Ltr."))); and a March 22, 2018 letter from the Hospital Defendants' counsel to Plaintiff (Bauer Decl., Ex. G (Dkt. #50-2 ("Mar. 22 Ltr."))). The Court also refers to transcripts of hearings in this Court held on January 11, 2018 ("Jan. 11 Tr." (Dkt. #17), and March 13, 2018 ("Mar. 13 Tr." (Dkt. #20)).

For ease of reference, the Court refers to the Fund Defendants' Memorandum of Law in Support of the Motion for Summary Judgment as "Fund Def. Br." (Dkt. #39); the Hospital Defendants' Memorandum of Law in Support of the Motion for Summary Judgment as "Hosp. Def. Br." (Dkt. #32); Plaintiff's combined Memorandum of Law in Opposition to the Motions for Summary Judgment as "Pl. Opp." (Dkt. #46); the Fund Defendants' Reply Memorandum of Law in Support of the Motion for Summary Judgment as "Fund Def. Reply" (Dkt. #47); and the Hospital Defendants' Reply Memorandum of Law in Support of the Motion for Summary Judgment as "Hosp. Def. Reply" (Dkt. #49).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in either party's Rule 56.1 Statement is supported by evidence and denied with merely a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

**BACKGROUND**

**A.     Factual Background**

Plaintiff is a Laboratory Technologist, who was previously employed by LIJ and Franklin.  (Hosp. Def. 56.1 ¶¶ 1-6).  For 36 years, from July 15, 1980, until his retirement on October 17, 2016, Plaintiff worked at LIJ.  (*Id.* at ¶¶ 1-3).  On June 8, 2004, Plaintiff was hired for the same position at Franklin, and worked in that position concurrently with his position at LIJ until November 2013.  (*Id.* at ¶¶ 5-6).

**1.     The Fund**

At all times relevant to the litigation, Plaintiff's employment was governed by a series of collective bargaining agreements (the "CBAs") between the Hospitals and the union representing him.  (Hosp. Def. 56.1 ¶ 7).  The relevant CBAs required the Hospitals to make monthly contributions to the Fund, an employee pension benefit plan (the "Plan") that is administered in accordance with the provisions of ERISA.  (*Id.* at ¶ 15; Fund Def. 56.1 ¶¶ 2-3).

The Fund is sponsored and administered by a Board of Trustees (the "Trustees"), consisting of equal numbers of representative from both labor and management.  (Hosp. Def. 56.1 ¶¶ 19-20; Fund Def. 56.1 ¶ 3).  The Trustees and their designees have full authority and discretion to administer the Plan.  (Hosp. Def. 56.1 ¶ 34).  As required under ERISA, participants' and beneficiaries' rights and benefits under the Plan are laid out, in layman's terms, in the Summary Plan Description ("SPD"), which is distributed to participants upon enrollment in the Fund.  (*Id.* at ¶ 30; Fund Def. 56.1 ¶ 3).

### 2. The Hospitals

The parties dispute whether LIJ and Franklin are two hospitals within a single employer or two discrete employers. Defendants assert that although the Hospitals did not formally merge until 2016, LIJ and Franklin have both been affiliated with the North Shore Hospital System ("North Shore"), a not-for-profit healthcare network, since May 2004. (Hosp. Def. 56.1 ¶¶ 43-48). Although he agrees that LJI and Franklin were both North Shore facilities during the time in question, Plaintiff claims that the hospitals were two distinct employers. (Pl. 56.1 Reply ¶¶ 47-48).

In support of their position, Defendants point to multiple application and hiring documents, completed and signed by Plaintiff, which indicated that Franklin was a part of North Shore. (Hosp. Def. 56.1 ¶ 57). When applying to Franklin, Plaintiff filled out a job application on North Shore letterhead, which asked him to check the boxes for any North Shore facilities at which he was interested in working. (*Id.* at ¶¶ 49, 52). The options included both LIJ and Franklin. (*Id.* at ¶ 52). Later in the hiring process, Plaintiff signed statements attesting that he had completed a North Shore orientation, and that he understood that North Shore had the right to terminate his employment. (*Id.* at ¶¶ 53-54).

Perhaps most significantly, when he was hired at Franklin, Plaintiff was told that he would receive one paycheck, reflecting his earnings at both LIJ and Franklin. (Hosp. Def. 56.1 ¶ 63). In point of fact, throughout the time period that Plaintiff worked for Franklin, he received only one paycheck from "North

Shore LIJ." (*Id.*; Fund Def. 56.1 ¶ 4; Mar. 13 Tr. 12:18-22). Plaintiff also received one IRS Form W-2 from "North Shore – LIJ Health Systems." (Hosp. Def. 56.1 ¶ 67; Pl. W2).

Plaintiff does not dispute that the Hospitals are North Shore facilities, but claims that, for the purposes of calculating his pension benefits (as distinguished from calculating his overtime pay, discussed below), they should be considered separate employers. (Pl. 56.1 Reply ¶¶ 47-48). He acknowledges that he received one paycheck, but argues that "the single payroll was a simple sharing arrangement" between the Hospitals. (*Id.* at ¶ 61). And with regards to the North Shore forms he filled out during the application process, Plaintiff claims that the forms were only on North Shore letterhead out of necessity: The Franklin Human Resources office had recently been flooded. (*Id.* at ¶¶ 57, 61). Finally, Plaintiff asserts that during the interview process and his employment at Franklin, several supervisors and administrators told him that LIJ and Franklin were separate hospitals. (*Id.* at ¶¶ 58-59; Hosp. 56.1 ¶¶ 58-59).

### 3. The Calculation of Overtime Payments

Whether the Hospitals constitute one or two employers was relevant to Plaintiff's compensation, particularly whether he was entitled to overtime pay. The CBAs require employers to pay union-represented employees, like Plaintiff, overtime compensation for any hours worked in excess of a regular full-time work week, or any hours worked in excess of a regular full-time work day. (Hosp. Def. 56.1 ¶14). Because, as Defendants argue, LIJ and Franklin are

hospitals within a single employer, Plaintiff was paid overtime when the combined hours at the two hospitals exceeded 40 hours per week. (Fund Def. 56.1 ¶ 4). As a result, the great majority of Plaintiff's hours at Franklin were considered overtime and compensated at an overtime rate. (Hing Decl. ¶ 6(ii)). The record contains no evidence that Plaintiff claimed two employers when it came to the receipt of overtime.

### 4.    The Initial Pension Calculations

In the summer of 2015, in anticipation of his retirement, Plaintiff submitted a pension application to the Fund. (Hing Decl. ¶ 6(i)). In response, the Fund calculated an annual pension for Plaintiff valued at $43,464.29. (Kaiser Decl. ¶ 9). The calculation was based only on Plaintiff's employment at LIJ; his concurrent work at Franklin was inadvertently omitted. (*Id.* at ¶ 7).

In October 2015, Plaintiff appealed his pension calculation on the basis that his Franklin hours had been excluded, and asked LIJ to provide the Fund with information regarding those wages. (Hosp. Def. 56.1 ¶¶ 107, 110). On April 20, 2016, LIJ provided the Fund with documentation of Plaintiff's gross wages at Franklin. (*Id.* at ¶¶ 112-13). The Fund then requested that LIJ detail the amount of overtime and regular (or "straight-time") pay received by Plaintiff at Franklin, which information LIJ provided. (*Id.* at ¶¶ 116-17). Because the Plan does not credit overtime pay towards pension benefits, the Fund recalculated Plaintiff's pension to include the straight-time pay, but not overtime pay, that he received at Franklin. (*Id.* at ¶¶ 119, 131). The recalculated value of Plaintiff's pension was $46,455.70. (Kaiser Decl. ¶ 9).

On January 9, 2017, Plaintiff emailed LIJ, objecting to the information LIJ had provided the Fund regarding the breakdown of Plaintiff's overtime and straight-time pay. (Hosp. Def. ¶¶ 122-23). In particular, Plaintiff asserted that the Fund had requested that LIJ calculate Plaintiff's overtime wages as if they had been straight-time wages. (*Id.* at ¶ 123). In response, on January 25, 2017, and February 6, 2017, LIJ emailed the Fund, copying Plaintiff, and asked for clarification as to what information the Fund needed from LIJ. (*Id.* at ¶¶ 124-25). The Fund arranged a conference call to discuss the matter on March 21, 2017. (*Id.* at ¶ 127). During the call, LIJ explained the basis of the information — specifically the breakdown of Plaintiff's overtime and straight-time pay at Franklin — that it had previously provided the Fund in April and November 2016. (*Id.* at ¶ 128). The Fund did not request any additional information from LIJ during the call or at any point afterwards. (*Id.* at ¶ 129).

### 5. Plaintiff's Appeal

On March 14, 2017, Plaintiff appealed the award of his benefit in the recalculated amount to the Fund's Retirement Committee (the "Committee").[2] (Hosp. Def. 56.1 ¶ 131; Fund Def. 56.1 ¶ 11). Plaintiff did not challenge the exclusion of LIJ overtime pay from his benefits, but argued that "it was unfair to exclude all [his] pay from [Franklin]." (Fund Def. 56.1 ¶ 12). Because he contended that LIJ and Franklin were two separate employers, Plaintiff asked the Committee to recalculate his pension benefits as if his compensation from

---

[2] The Plan provides that individuals who believe that their benefit calculations are incorrect may appeal to the Committee, a subset of the Board of Trustees. (Hosp. Def. 56.1 ¶¶ 39-40).

Franklin — which had been received almost exclusively at an overtime rate — had been straight-time pay.  (*Id.*).

On June 1, 2017, the Committee denied Plaintiff's appeal.  (Hosp. Def. 56.1 ¶ 135).  Although the Committee "found [Plaintiff's] arguments interesting," it concluded that they were "not a basis under the Plan to include [his] overtime pay in [his] pension calculation."  (Comm. Ltr. 2).  The Committee noted that it was "bound by law to administer the Plan in accordance with its terms, and cannot make exceptions not matter how sympathetic they may feel."  (*Id.*).  At that point, Plaintiff's appeals under the Plan were exhausted. (Fund Def. 56.1 ¶ 17).

## B.    Procedural Background

On September 28, 2017, Plaintiff filed this action, alleging claims under ERISA.  (Dkt. #1).  On May 15, 2018, Defendants filed motions for summary judgment.  (Dkt. #22-41).  Plaintiff opposed the motions on July 19, 2018. (Dkt. #44-46).  Defendants replied to Plaintiff's opposition submission on July 30, 2018.  (Dkt. #47-51).  Accordingly, the motions are fully briefed and ripe for decision.

## DISCUSSION

## A.    Summary Judgment Under Federal Rule of Civil Procedure 56

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[3]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

---

[3]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  See Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). In considering "what may reasonably be inferred" from evidence in the record, however, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, … conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita,* 475 U.S. at 587; *Wyler* v. *United States,* 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

In light of Plaintiff's *pro se* status, the Court "afford[s] [him] a special solicitude[,]" and, in this regard, will liberally construe their pleadings and motion papers. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Under this directive, the Court will read Plaintiff's "'submissions to raise the strongest arguments they suggest.'" *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

## B.    The Court Grants the Hospital Defendants' Motion for Summary Judgment

Plaintiff brings a variety of claims — all of which involve the exclusion of his Franklin overtime pay from his pension calculation — against both the

Hospital Defendants and the Fund Defendants. Because they are more straightforward, the Court first addresses Plaintiff's claims against the Hospitals.

During a January 11, 2018 conference before the Court, Plaintiff clarified his two claims against the Hospitals. (Jan. 11 Tr. 38:2-42:6; Hosp. Def. 56.1 ¶¶ 145-47). *First*, Plaintiff argues that, at the time he was hired by Franklin, the Hospitals had a duty under ERISA to notify him that his overtime wages would be excluded from the calculation of his pension benefits under the Plan. (Hosp. Def. 56.1 ¶ 146). *Second*, Plaintiff claims that, after his retirement, the Hospitals wrongfully refused to provide the Fund with information necessary to calculate his benefits. (*Id.* at ¶ 147). As detailed herein, Plaintiff is incorrect on both counts.

### 1. The Hospital Defendants Are Not ERISA Fiduciaries, and Had No Duty to Notify Plaintiff of the Plan's Overtime Exclusion

Plaintiff concedes that, when he was hired at Franklin, he was told that his hours at Franklin and LIJ would be aggregated for the purposes of overtime pay. (Hosp. Def. 56.1 ¶ 62; Pl. 56.1 Reply ¶ 62). However, Plaintiff argues that the Hospitals breached their fiduciary duty under ERISA when they failed to "expressly ma[k]e clear" that his overtime earnings at Franklin would not count toward any eventual pension benefits. (Pl. 56.1 Reply ¶ 62; Jan. 11 Tr. 38:2-39:25). The Court disagrees and concludes that, as a matter of law, the Hospital Defendants are not ERISA fiduciaries, and liability does not attach.

In addition to anyone who is specifically named as a fiduciary by the terms of a plan, ERISA imposes fiduciary duties on those parties who exercise

discretion, management, or control over plan assets, or have the authority to do so.  *See Bouboulis* v. *Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006).  "Plan fiduciaries include, for example, plan trustees, plan administrators, and members of a plan's investment committee."  *ERISA Fiduciary Duties*, U.S. DEP'T OF LABOR, https://www.dol.gov/general/topic/retirement/fiduciaryresp. (last visited Jan. 30, 2019).

Plaintiff does not dispute that the Plan vests sole authority to "administer, interpret, and apply" the Plan in the Fund's Trustees.  (Hosp. Def. 56.1 ¶ 26; Pl. 56.1 Reply ¶ 26).[4]  And indeed, the Hospitals had neither discretion nor control over the management, interpretation, or implementation of the Plan.  Instead, the Hospitals' only responsibilities with regards to the Plan were (i) to report to the Fund any information needed to determine employee eligibility for pension benefits, including employee wages; and (ii) to submit monthly contributions to the Fund.  (Hosp. Def. 56.1 ¶¶ 15, 17).  Neither of these functions included any level of interpretation of, or control over, the Fund.

The Hospitals made a *business* decision — to aggregate Plaintiff's hours and pay him overtime — that was wholly unrelated to the Fund or its administration.  *See Barrus* v. *Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243,

---

[4]     The Board of Trustees is composed of trustees designated by the union and by the participating employers, the latter of which designate trustees on a geographical basis. (Hosp. Def. 56.1 ¶¶ 19-22).  Trustees designated by employers may or may not be employed by an employer that contributes to the Fund.  (*Id.* at ¶ 23).  The employer itself is not a trustee.

258 (W.D.N.Y. 2010) (finding that setting compensation levels is a business, not a fiduciary, decision, even if such a decision has a collateral effect on a plan administered under ERISA). That decision, which complied with applicable wage and hour laws, *see* 29 C.F.R. § 791.2, does not trigger fiduciary duties. S*ee Flanigan* v. *Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) (finding that where a decision is "at its core, a corporate business decision," the employer was not acting as a fiduciary and cannot be held liable for a breach of ERISA fiduciary duties).

After the Hospital Defendants made their business decision and informed the Fund of Plaintiff's wages as required by the CBAs, the Fund's Trustees, under their authority to interpret the Plan, determined whether Plaintiff was entitled to pension credits based on his overtime compensation. (Hosp. Def. 56.1 ¶¶ 17, 26).[5] And thus it was the Trustees, not the Hospitals, who interpreted the Plan to deny Plaintiff's appeal for additional pension benefits based on his overtime pay. (*Id.* at ¶¶ 39-42, 119, 134-35). Plaintiff subsequently appealed that decision to the Trustees, and not to either Hospital, precisely because the Hospital Defendants had no discretion to interpret, apply, or otherwise resolve the meaning of the Plan's provisions as applied to Plaintiff's circumstances. (*Id.* at ¶¶ 39-40, 107, 131-35).

---

[5]    In addition, at no point did the Hospitals attempt to interpret or administer the Plan, despite not having the authority to do so. Plaintiff does not dispute that no Franklin employees spoke to him about his pension benefits either before or after his employment at the hospital. (Hosp. Def. 56.1 ¶¶ 97-98, 101; Pl. 56.1 Reply ¶ 101). Nor did he receive any materials from Franklin regarding his pension benefits. (*Id.*).

On this record, the Court concludes that, as a matter of law, the Hospitals are not fiduciaries under ERISA.  Accordingly, under the statute, the Hospitals did not have a duty to determine Plaintiff's pension benefits or explain those benefits to him.[6]

### 2. The Hospital Defendants Did Not Breach Their Obligation Under ERISA to Provide the Fund with Requested Information

During the January 11, 2018 conference, Plaintiff clarified his second claim against the Hospitals:  They "didn't correctly provide information to the union at the time it was requested."  (Jan. 11 Tr. 39:20-21).  Specifically, he claimed, the Fund "might have sent [the Hospitals] an email or something"

---

[6]    In his opposition to the Hospital Defendants' motion, Plaintiff abandons his claim that the Hospitals breached a fiduciary duty.  Instead, Plaintiff argues negligent misrepresentation.  (Pl. Opp. 6-7).  During the hiring process, Franklin employees accurately stated that Plaintiff would receive one paycheck aggregating his hours at LIJ and Franklin, the latter of which would be paid at an overtime rate.  (*Id.* at 6).  Plaintiff argues that, "[b]y making this representation to [Plaintiff] without telling him that none of his hours paid at an overtime rate would be included in his pension calculation, the Hospitals negligently misled [Plaintiff] into believing that those hours would be included in his pension calculation."  (*Id.*).

The Court is mindful of its obligation to afford a "special solicitude" to *pro se* parties, but it need not address claims raised for the first time in opposition to a motion for summary judgment.  *See Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint through statements made in motion papers"); *Nassry* v. *St. Luke's Roosevelt Hosp.*, No. 13 Civ. 4719 (GHW), 2016 WL 1274576, at *10 (S.D.N.Y. Mar. 31, 2016) (collecting cases); *Scott* v. *City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 217 (S.D.N.Y. 2009) (declining to consider claims not pleaded in the *pro se* complaint, but raised for the first time in opposition to summary judgment), *aff'd sub nom. Scott* v. *N.Y.C. Dep't of Corr.*, 445 F. App'x 389 (2d Cir. 2011) (summary order).

Even were it appropriate to consider the claim, it would fail on the merits.  ERISA's civil enforcement provisions are intended to be exclusive remedies and preempt state claims that relate to an ERISA Plan.  *See* 29 U.S.C. § 1144(a); *Aetna Health Inc.* v. *Davila*, 542 U.S. 200, 208-10 (2004).  Even if properly pleaded, Plaintiff's negligent misrepresentation claim relates to a benefit plan covered by ERISA, and therefore would appear to be preempted by the statute.  *See Varela* v. *Barnum Fin. Grp.*, No. 13 Civ. 3332 (ALC), 2015 WL 12964717, at *3 (S.D.N.Y. Aug. 11, 2015), *aff'd*, 644 F. App'x 30 (2d Cir. 2016) (summary order); *see also Rubin-Schneiderman* v. *Merit Behavioral Care Corp.*, 121 F. App'x 414, 415 (2d Cir. 2005) (summary order) ("Plaintiff's common-law negligence claims are preempted by ERISA").

requesting that his overtime pay at Franklin be calculated as if it were straight-time pay. (*Id.* at 38:20-39:1). The Hospitals, Plaintiff argues, were unresponsive.

Although the Hospital Defendants are not ERISA fiduciaries, when an employer withholds information, or necessary action, thereby obstructing an individual's receipt of vested Plan benefits, the employer may be liable as a fiduciary to the extent of that action. *See Blatt* v. *Marshall & Lassman*, 812 F.2d 810, 813 (2d Cir. 1987). Here, nothing in the record suggests that the Hospitals withheld any information from the Fund, and no reasonable jury could find that Plaintiff has stated a claim in this regard under ERISA.

The Hospital Defendants never withheld information from the Fund or refused to comply with a request for information. Twice, in April and November 2016, the Hospitals provided the Fund with detailed information regarding Plaintiff's wages at Franklin. (Hosp. Def. 56.1 ¶¶ 112-17). The Court understands that Plaintiff's claim, as clarified, relates to an incident that occurred later, in early 2017. In January of that year, Plaintiff contacted LIJ, claiming that the Fund had requested that the Hospital Defendants calculate his overtime wages as if they had been straight-time wages. (*Id.* at ¶ 123). Unaware of that request (and, by extension, unaware of any alleged noncompliance), LIJ promptly contacted the Fund to clarify what information was needed. (*Id.* at ¶¶ 124-25). Contrary to Plaintiff's assertions then and now, the Fund did not request that the Hospitals alter their reporting of Plaintiff's wages. (*Id.* at ¶ 129).

Because there is no genuine dispute of material fact as to whether the Hospitals withheld information from the Fund, the Court grants summary judgment on this claim in favor of the Hospital Defendants.

## C. The Court Grants the Fund Defendants' Motion for Summary Judgment

In addition to his claims against the Hospital Defendants, Plaintiff brings several claims against the Fund Defendants. *First*, Plaintiff argues that the Committee erred when it declined to convert his overtime hours to straight-time hours and denied his appeal. (Pl. Opp. 3-5). *Second*, Plaintiff alleges the Fund Defendants failed to fulfill several of their obligations under ERISA, including that they breached their fiduciary duty to safeguard, and account for, employer contributions. (Compl. ¶¶ 55-57). In addition, Plaintiff claims that the Fund Defendants misled Plaintiff about the Plan when they failed to fulfill their ERISA disclosure obligations. (Pl. Opp. 5-6). As explained herein, the Court grants summary judgment in favor of the Fund Defendants on all three claims.

### 1. The Committee's Review of the Plan and Denial of Plaintiff's Appeal Were Not Arbitrary and Capricious

Plaintiff argues that the Committee's decision to exclude his Franklin overtime pay from his pension calculation, thereby denying his administrative appeal, was arbitrary and capricious. (Pl. Opp. 3-5). Those hours, according to Plaintiff, should have been converted to straight-time hours for the purposes of calculating his pension because (i) the Plan does not define "overtime"; and (ii) Franklin and LIJ were two separate employers. (*Id.*).

16

### a.      Review of Eligibility Determinations Under ERISA

ERISA section 502(a), codified at 29 U.S.C. § 1132(a), permits a beneficiary of an employment benefit Plan to bring a civil action "to recover benefits due to him under the terms of his Plan, to enforce his rights under the terms of the Plan." 29 U.S.C. § 1132(a)(1)(B). "Judicial review of a Plan administrator's underlying benefits determination is reviewed *de novo* unless … the Plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." *Miles* v. *Principal Life Ins. Co.*, 720 F.3d 472, 485 (2d Cir. 2013) (citing *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989)).

Where a Plan affords the administrator "broad discretionary authority to determine eligibility," such benefits determinations "are reviewed under the arbitrary and capricious standard." *Celardo* v. *GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003). Under this standard, "a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *McCauley* v. *First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (citing *Pagan* v. *NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). In this setting, "[s]ubstantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] … requires more than a scintilla but less than a preponderance.'" *Celardo*, 318 F.3d at 146 (quoting *Miller* v. *United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995)).

### b. No Rational Factfinder Could Conclude That the Committee's Decision Was Arbitrary and Capricious

Here, it is undisputed that the Plan gives the Trustees and their authorized designees discretionary authority under the terms of the Plan to determine eligibility benefits. (Hosp. Def. 56.1 ¶ 26).[7] Accordingly, the Court will not disturb the Committee's finding, unless it was arbitrary and capricious.

To review, the Committee excluded the Franklin hours because the plain language of the Plan required them to do so. (Comm. Ltr. 1-2). Under the Plan, an employee's pension benefit is calculated using the "high five out of ten-year" method. (SPD 48). In other words, "the highest average of [an employee's] Regular Pay during five consecutive Plan Years of employment after [an employee's] Applicable Effective Date and within [an employee's] last 10 Plan Years of Credited Future Service." (*Id.*). The Plan defines Regular Pay as an employee's total pay in a given year, explicitly excluding overtime in the definition. (*Id.*; Hing Decl. ¶ 8).[8] Based on those terms, and principally because "the calculation of Final Average Pay for all participants excludes overtime," the Committee denied Plaintiff's appeal. (Comm. Ltr. 1-2).

---

[7] The SPD provides that the Trustees and their designees "have the sole and absolute discretionary ability to … [t]ake all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan." (SPD § 12.9). In addition, the SPD states that "[a]ny determination made by the Trustees shall be given deference in the event it is subject to judicial review and shall be overturned *only if it is arbitrary and capricious.*" (*Id.* (emphasis added)).

[8] The SPD defines "Regular Pay" as an employee's "total pay in a Plan Year during periods of Covered Employment, *excluding overtime*, on-call pay, commissions, bonuses and gratuities, and expense allowance." (SPD § 12 (emphasis added)).

Undaunted by the Plan's clear language, Plaintiff argues that although the definition of Regular Pay clearly excludes overtime, the Committee's denial was arbitrary and capricious because the Plan does not define the term "overtime." (Pl. Opp. 3). Overtime, he argues, should be read to include only the "portion of the payment that is at the incremental overtime rate, as opposed to the amount attributable to straight time payment for the hours in question." (*Id.* at 4). Put more plainly, Plaintiff asserts that he should receive pension benefits for the hours he worked at Franklin, even if they were credited to him for compensation purposes as overtime. But, he concedes that he should only receive the benefit at his regular rate of pay, excluding the overtime premium.

As proof that his interpretation of "overtime" is correct, Plaintiff notes that North Shore made contributions to the Fund on his behalf for all hours worked, not just those at the overtime rate. (Pl. Opp. 4). Plaintiff is correct: North Shore's monthly contributions to the Fund are calculated as a percentage of its gross employee payroll, which includes payments to employees for overtime hours worked. (Hosp. Def. 56.1 ¶¶ 85-86).

Despite Plaintiff's thoughtful arguments, the Court concludes that the Committee's interpretation of the plain language of the Plan was entirely reasonable. The Plan explicitly excludes overtime from the calculation of Regular Pay. Moreover, the usual and ordinary meaning of "overtime" is all hours worked over 40 in a workweek or over 8 in a workday. "Overtime pay" is commonly defined as "time and a half ... [the] regular rates of pay," not the

incremental difference between the regular rate and time and a half. *Overtime Pay*, U.S. DEP'T OF LABOR, https://www.dol.gov/whd/overtime_pay.htm. (last visited Jan. 30, 2019). Furthermore, it is not uncommon for pension plans to exclude overtime pay — the entire rate of time and a half — from a benefit calculation. *Trustees of ALA-Lithographic Pension Plan* v. *Crestwood Printing Corp.,* 113 F. Supp. 2d 611, 611-12 (S.D.N.Y. 2000).

Much like the Committee, the Court finds Plaintiff's argument regarding fund contributions interesting. (Comm. Ltr. 2). However, "[w]here both the Plan administrator and a spurned claimant offer rational, though conflicting, interpretations of Plan provisions, the administrator's interpretation must be allowed to control." *McCauley*, 551 F.3d at 132 (internal citations and quotations omitted). In addition, the fact that overtime hours factor into the Hospitals' contributions to the Fund is immaterial to the formula for determining a pension. Instead, the Fund's decision to include overtime in employer contribution calculations is a design choice, which allows for greater overall payout to participants.[9] Even Plaintiff recognizes that "the Plan provides that contributions are not earmarked for any particular Plan beneficiary." (Pl. Opp. 4).

---

[9]     In a January 11, 2018 conference before the Court, the Fund explained the decision to include overtime hours in the calculations for payment into the Fund, but not in pension benefits: "[I]t's true that ... both hospitals paid all the contributions on all of his hours that were due, but the Plan does not credit in its payment formula overtime hours. And these are complicated actuarial balancing decisions that are made, so that the Plan's assets can be stretched to pay the pensions over the lifetime of many, many workers." (Jan. 11 Tr. 13:21-14:05).

In short, the Committee's interpretation of the plain language of the Plan was entirely reasonable. And yet Plaintiff advances an alternative argument: The Fund's denial of his appeal was arbitrary and capricious "because the decision disregarded the fact that each of the two hospitals was a separate and independent employer." (Pl. Opp. 4). Because of the "distinct nature of the two hospitals," Plaintiff argues that his hours at Franklin should not have been aggregated with his hours at LIJ, even though such aggregation had worked to his benefit for years in the form of overtime compensation for his Franklin work. (*Id.*). For pension-calculation purposes, Plaintiff argues, he should receive straight-time credit for these hours.[10]

In support of his argument that the Hospitals were two separate employers, Plaintiff notes that (i) he had to "go through a separate application and onboarding process before beginning at Franklin";[11] (ii) the Hospitals "were

---

[10]    The Fund Defendants argue that the Court cannot consider whether LIJ and Franklin were separate employers, because the issue was not developed during the administrative appeals process. (Fund Def. Reply 6). They argue that Plaintiff "did not then submit evidence that the hospitals were separate employers and that his earnings were wrongly paid and reported." (*Id.* at 6-7). Although there is a presumption that the Court's review is limited to the administrative record, "[t]he decision whether to consider evidence from outside the administrative record is within the discretion of the district court." *Muller* v. *First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003).

Here, particularly in light of Plaintiff's *pro se* status, the Court elects to exercise that discretion. In addition, it is not entirely clear from the record that this claim was not brought on appeal. The Committee's letter denying Plaintiff's appeal indicates that they did consider this argument. (Comm. Ltr. 2 ("You asked the Fund to convert your overtime salary to straight time. You believed that when you were hired at Franklin, the hospital was not merged with Long Island Jewish.")).

[11]    The application and onboarding process required Plaintiff to

(1) complete a new full employment application, (2) undergo a full background check and pre-employment screening, (3) provide an authorization for LIJ to release employment information and referrals to Franklin, (4) complete a medical exam, (5) complete various pre-employment assessments, (6) sign new employee required forms (including tax forms), (7) undergo new employee

21

in two separate collective bargaining relationships with the Union"; and (iii) the Hospitals were incorporated separately prior to 2016. (Pl. Br. 4-5).

Once again, no reasonable jury would find that the Committee's decision to exclude Franklin's overtime hours was without reason. As previously discussed, the Plan clearly excludes overtime hours from pension calculations, and Plaintiff was paid an overtime premium for the majority of his hours at Franklin. On appeal, the Hospitals submitted documentation of their payroll, including a breakdown of Plaintiff's hours at the straight-time and overtime rates. (Wage Records). The Committee was justified in relying on those records and applying the Plan accordingly.

Furthermore, undisputed evidence in the record indicates that the Hospitals were two facilities of single employer, North Shore. Throughout his employment with Franklin, Plaintiff received one paycheck from "North Shore LIJ", reflecting both his earnings at both LIJ and Franklin. (Fund Def. 56.1 ¶ 4; Hosp. Def. 56.1 ¶¶ 63, 65; Mar. 13 Tr. 12:18-22). During that time, he also received a single IRS Form W-2 from "North Shore – LIJ Health Systems." (Hosp. Def. 56.1 ¶ 67; Pl. W2). In addition, multiple application and hiring documents, completed and signed by Plaintiff, indicated that Franklin was a part of North Shore. (Hosp. Def. 56.1 ¶¶ 49, 52-54, 57). Although the formal corporate merger was not completed until 2016, a reasonable juror could find

---

orientations and anti-discrimination and sexual harassment trainings, and (8) sign "Franklin Hospital Medical Center Performance Expectations for Customer Service Competency" form.

(Pl. Opp. 4).

only that LIJ and Franklin were two facilities within one employer, whose functional integration took place over time.

### 2. The Fund Defendants Did Not Breach Their Fiduciary Duties by Failing to Safeguard and Account for Employer Contributions

The Court can quickly dispose of Plaintiff's next claim. In his Complaint, Plaintiff makes vague allegations that the Fund Defendants failed to account for or safeguard Franklin's contributions properly, in breach of their fiduciary duties. (Compl. ¶ 57). As support for this claim, Plaintiff argues that, even though Franklin made contributions to the Fund, the Committee claimed that Franklin's alleged contributions "could have not been accepted by the … Fund because they were for overtime payments made from [Franklin] to Plaintiff." (*Id.* at ¶ 56).

Plaintiff's claim is not supported by the record, and, as it happens, was abandoned by Plaintiff at the summary judgment stage. It is undisputed by the Fund that North Shore, on behalf of both LIJ and Franklin, made all required contributions to the Fund for hours worked by Plaintiff. (Fund Def. 56.1 ¶ 5; Pl. 56.1 Reply ¶ 5). Nothing in the record indicates that the Committee told Plaintiff that Franklin's contributions were not accepted because they were based on overtime hours. Rather, as previously discussed, Franklin's monthly contributions to the Fund *always* took into account the overtime paid to union-represented employees. (Fund Def. 56.1 ¶¶ 85-87).

### 3.    The Fund Defendants Did Not Violate ERISA Disclosure Obligations

Next, Plaintiff claims that the Fund Defendants "breached a duty to provide relevant information about the Plan and not to mislead ... Plaintiff about its operation," in violation of ERISA.  (Pl. Opp. 1, 5-6).  In point of fact, ERISA imposes a variety of disclosure obligations.  *See* 29 U.S.C. §§ 1021-1025.  At issue here is the requirement that the SPD must set out the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  *Wilkins* v. *Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 580–81 (2d Cir. 2006) (quoting 29 U.S.C. § 1022(b)).

Plaintiff concedes that, as required under ERISA, the Fund set out its policy choices, in layman's terms, in the SPD.  (Fund Def. 56.1 ¶ 3; Pl. 56.1 Reply ¶ 3).  However, he argues that the disclosure was insufficient because the SPD's language was ambiguous.  (Pl. Opp. 5).  Accordingly, Plaintiff asserts that the SPD did not provide him with sufficient notice that his overtime hours at Franklin would not be considered when calculating his pension, thereby violating ERISA disclosure requirements.  (*Id.*).

Plaintiff's claim fails under either of the applicable standards of review: *de novo* or arbitrary and capricious.  "[T]he Second Circuit has never squarely spoken to what standard of review applies in evaluating an SPD's compliance with ERISA."  *Wilkins*, 445 F.3d at 582; *see also Burke* v. *Kodak Ret. Income Plan*, 336 F.3d 103, 110 (2d Cir. 2003) ("[T]he standard of review to be applied when the question is whether the SPD complies with ERISA's disclosure requirements is not so clear.").  When "the issue of an SPD's compliance may

turn on the interpretation of ambiguous language in an SPD ... there might be sound reasons for courts to defer to Plan administrators' interpretations of the SPDs." *Wilkins*, 445 F.3d at 582. Here, the Fund Defendants prevail under either standard.

As previously discussed, the SPD unambiguously states that pension benefits are calculated by averaging several years of an employee's "Regular Pay." (SPD 48-49, 120, 132). Next, the SPD unequivocally states, "Regular Pay does not include overtime[.]" (*Id.* at 48, 120, 124, 127). Separately, the SPD explicitly defines Regular Pay as, "[y]our total pay in a Plan Year during periods of Covered Employment *excluding overtime*, on-call pay, commissions, bonuses and gratuities, and expense allowances." (*Id.* at 124 (emphasis added)).

No reasonable jury could find that the SPD was so ambiguous and incomplete as to violate § 1022(b). Plaintiff argues that "[his] interpretation of the language" — presumably that his overtime hours should have counted towards his Regular Pay — is supported by the "circumstances." (Pl. Opp. 5-6). Those circumstances include the facts that (i) North Shore included overtime payments to employees when calculating its monthly contribution; and (ii) Franklin's and LIJ's "many indicia of two different employers." (*Id.*). The Court rejects Plaintiff's claims on two grounds.

*First*, overtime has a definite and precise meaning, one that is not overcome by the uniqueness of Plaintiff's situation or his proposed interpretation of the language. "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different

interpretations in the litigation." *Hunt Ltd.* v. *Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). The Fund did not violate its ERISA disclosure obligations by failing to anticipate, and draft around, Plaintiff's personal circumstances. *See Estate of Becker* v. *Eastman Kodak Co.*, 120 F.3d 5, 9 (2d Cir. 1997) ("[A]n SPD need not anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status." (internal quotations and citations omitted)).

The SPD clearly stated that overtime pay would not be included in pension calculations. The Fund was not obligated to explain further that this rule holds, despite the unrelated policy decision to include overtime hours in the calculation of employer contributions. Nor was the Fund required, under ERISA, to explain to Plaintiff that the overtime pay he knowingly received for his Franklin hours would still be excluded if he were to later dispute the status of the Hospitals.

*Second,* as the Fund Defendants note, Plaintiff's arguments at this stage are better suited for a claim for benefits. (Fund Def. Br. 16). Both arguments are more accurately construed as critiques of the Fund's design and policy choices, than as challenges to the SPD's language. Plaintiff may disagree with the Fund's policy choice to include overtime wages in pay-in contributions to the Fund and not in pay-outs to pension-receiving employees, but he cannot prevail on a claim that the policy choice in question was not clearly articulated to him. Likewise, the fact that the Hospitals had "so many indicia of two different employers," is an argument that Plaintiff's hours at Franklin should

be credited as straight-time hours towards his pension benefits.  In other words, it is an argument that the Fund should make an exception to the rule, not that the rule itself was unclear.

As previously discussed, it appears that Plaintiff raised both of these arguments when challenging the Committee's decision to deny his appeal.  (Pl. Opp. 4-5).  In this Opinion, the Court reviewed Plaintiff's claim under the appropriate deferential standard and rejected both arguments in turn.  No reasonable juror could find that the Fund Defendants failed "to make explicit in the SPD that employees would receive no pension related compensation at all in connection with hours paid at the overtime rate" (*id.* at 6), and the Court grants summary judgment to them on this claim.

## D.  Defendants Did Not Violate Their Discovery Obligations, Nor Did They Fail to Provide Plaintiff with Relevant Information

In his final claim, Plaintiff alleges that both sets of Defendants failed to provide him with relevant information on two occasions.  This claim also fails.

*First*, Plaintiff asserts that "[o]n numerous occasions [Plaintiff] tried to get more information about his benefits from his supervisors and HR representative in the two Hospitals, and from the Fund and Union representatives but they failed to provide him with that information[.]"  (Pl. 56.1 Reply ¶¶ 97, 101).  Plaintiff's claim is only supported by his own declaration, which makes the same vague allegations, using the exact same language.  Although the Court "must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary

judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal

citation omitted) (citing *Matsushita,* 475 U.S. at 587; *Wyler* v. *United States,*

725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166

(2d Cir. 2010).  Because Plaintiff only offers an allegation, unsupported by any

fact in the record (and contradicted by several), the Court finds as a matter of

law that Defendants did not fail to provide him with relevant information.

*Second*, Plaintiff alleges that Defendants violated their discovery

obligations when they failed to produce "a spreadsheet showing the regular and

overtime hours worked by [Plaintiff] at each of the two hospitals and the

corresponding pension contributions made by each of the two hospitals to the

Fund during the relevant period.  (Pl. Opp. 7).  As it happens, the Court asked

the Hospital Defendants to produce this spreadsheet to Plaintiff during a

January 11, 2018 conference.  (Jan. 11 Tr. 12:4-8, 23:18-21, 31:11-15).

Specifically, the Court asked the Hospital Defendants to produce "some sort of

spreadsheet or analysis for what contributions were made on [Plaintiff's] behalf

during his employment tenure at the organization." (*Id.* at Tr. 5-8).

Plaintiff's claim is false.  On March 12, 2018, the Hospital Defendants

produced to Plaintiff a chart summarizing his annual overtime and non-

overtime wages, and pension contributions made on his behalf for July 2004

through 2016.  (Mar. 12 Ltr. 3-4).[12]  According to the Hospital Defendants,

---

[12]     The records produced to Plaintiff were necessarily incomplete.  Prior to July 2004, North
Shore maintained paper records.  (Mar. 12 Ltr. 1-2).  In 2015, those records were lost in
a major fire.  (*Id.*).  Plaintiff began working for Franklin in June 2004.  (*Id.*).  In addition,
North Shore was not able to locate pension contribution records for April and May
2011.  (*Id.*).

Plaintiff subsequently requested a "more fine-grained version" of the spreadsheet, breaking down what time was allotted to which hospital. (*Id.* at 8:01-07). On March 22, 2018, the Hospital Defendants produced a second spreadsheet that again summarized his annual overtime and non-overtime wages, but this time noted the specific department to which the hours had been charged. (Mar. 22 Ltr. 2-3).

At no point between May 22, 2018, and the filing of his opposition on July 18, 2018, did Plaintiff request additional discovery from Defendants, or notify the Court that he had not received any requested document. He did not request any additional information from Defendants, or a different version of the spreadsheet. As a result, as a matter of law, the Court finds that Defendants complied with their discovery obligations.

## CONCLUSION

For the reasons detailed above, Defendants' motions for summary judgment are GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      January 31, 2019
            New York, New York
                                    _____
                                        KATHERINE POLK FAILLA
                                        United States District Judge